UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMY R.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:21-cv-00260-MJD-JPH |
| | ) |
| KILOLO KIJAKAZI,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Amy R. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** and **REMANDS** the decision of the Commissioner.

**I.  Background**

Claimant applied for SSI in November 2017, alleging a disability onset of January 1, 2017. [Dkt. 12-5 at 2.] Claimant's application was denied initially on May 1, 2018, and again

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

upon reconsideration on August 22, 2018. [Dkt. 12-4 at 4, 11.] A telephonic hearing was then held before Administrative Law Judge Teresa A. Kroenecke ("ALJ") on April 17, 2020. [Dkt. 12-2 at 43-67.] On June 2, 2020, ALJ Kroenecke issued her unfavorable determination, finding that Claimant had not been under a disability since November 22, 2017, the date Claimant's SSI application was filed. [Dkt. 12-2 at 37.] After the Appeals Council denied Claimant's request for review on December 3, 2020, [Dkt. 12-2 at 2], Claimant timely filed her Complaint on February 1, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 CFR § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 CFR § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 CFR pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 CFR § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 CFR § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 CFR § 416.920(a)(4)(v).

Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Kroenecke first determined that Claimant had not engaged in substantial gainful activity since November 22, 2017. [Dkt. 12-2 at 25.] At step two, the ALJ found that Claimant had the following severe impairments: "cervical and lumbar degenerative disc disease status post cervical surgery; bilateral carpal tunnel syndrome; thumb degenerative joint disease[;] obesity; depression, generalized anxiety disorder, posttraumatic stress disorder (PTSD), Attention Deficit Hyperactivity Disorder (ADHD); and history of polysubstance abuse (20 CFR 416.920(c))." [Dkt. 12-2 at 25.] At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during the relevant time period. [Dkt. 12-2 at 26.] ALJ

Kroenecke then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b) except occasional stooping, kneeling, crouching, and climbing of ramps and stairs; no crawling; no climbing of ladders, ropes, or scaffolds; no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards such as unprotected heights or dangerous machinery; occasional overhead reaching with the bilateral upper extremities; and only frequent handling or gross manipulation, fingering or fine manipulation with the bilateral upper extremities. The claimant is also able to understand, remember, carry out short, simple, routine instructions; and sustain attention and/or concentration for at least two-hour periods at a time and for 8 hours in the workday on short, simple, routine tasks. The claimant is restricted from fast-paced production work that is not assembly line work. He [sic] may have only occasional interaction with supervisors and coworkers and no interaction with the public.

[Dkt. 12-2 at 28.]

At step four, ALJ Kroenecke found that Claimant was unable to perform any of her past relevant work during the relevant time period. [Dkt. 12-2 at 35.] At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as housekeeping cleaner, inspector, and packager. [Dkt. 12-2 at 36-37.] Accordingly, the ALJ concluded that Claimant was not disabled. [Dkt. 12-2 at 37.]

### IV. Discussion

Claimant advances three arguments in support of her request to reverse the Commissioner's decision, regarding the ALJ's (1) RFC determination, (2) subjective symptom analysis, and (3) consideration of the medical source opinions. [Dkt. 14.] In response, the Commissioner asserts that ALJ Kroenecke's decision is based on substantial evidence and thus the issues raised by Claimant do not constitute reversable error. [Dkt. 15.] As explained below, the Court agrees with Claimant that the ALJ has erred by not supporting her decision with substantial evidence.

**A. RFC**

First, Claimant argues that the ALJ's RFC assessment is fatally flawed with regard to Claimant's limitations in concentration, persistence, or pace. [Dkt. 14 at 21.]

The ALJ found that Claimant had "mild" limitations in understanding, remembering, or applying information; "moderate" limitations in interacting with others; "moderate" limitations in concentration, persistence, or pace; and "mild" limitations in adapting or managing herself.[3] [Dkt. 12-2 at 27.] Her RFC concluded that

> [t]he claimant is also able to understand, remember, carry out short, simple, routine instructions; and sustain attention and/or concentration for at least two-hour periods at a time and for 8 hours in the workday on short, simple, routine tasks. The claimant is restricted from fast-paced production work that is not assembly line work. He [sic] may have only occasional interaction with supervisors and coworkers and no interaction with the public.

[Dkt. 12-2 at 28.] In explaining this determination, the ALJ stated:

> I find the claimant has the mental capacity to understand, remember and follow simple instructions, but is restricted to work involving occasional interactions with others and no interaction with the general public. Within these parameters, and in the context of performing simple and repetitive tasks, she is able to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence. While I note a "moderate" limitation in the "paragraph B" criteria above for concentration, persistence or pace, this is based upon the record as a whole and all situations the claimant might encounter. However, when limited as described above, her ability to function is higher. Within these parameters, the claimant is able to sustain the attention, concentration and persistence needed to perform on a regular and continuing basis.

---

[3] This determination is already questionable. In her Mental Impairment Questionnaire, LCSW Elizabeth Lyon, who has treated Claimant monthly since February 2018, reported that Claimant had "moderate" limitations in understanding, remembering, and applying information; "marked" limitations in interacting with others; "moderate" limitations in concentration, persistence, or pace; and "moderate" limitations in adapting or managing oneself. [Dkt. 12-16 at 197.] Additionally, both State Agency Psychologists, J. Gange, Ph.D., and Joelle Larsen, Ph.D., found that Claimant had "mild" limitations in understanding, remembering, and applying information; "moderate" limitations in interacting with others; "moderate" limitations in concentration, persistence, or pace; and "moderate" limitations in adapting or managing oneself. [Dkt. 12-3 at 7, 21.] The ALJ does not explain why she deviated from all three medical opinions of record in finding that Claimant had "mild" limitations in adapting or managing oneself.

5

[Dkt. 12-2 at 33.]

The RFC and its explanation are not based on substantial evidence. The ALJ does not explain what led to her finding regarding Claimant's apparent heightened ability to maintain concentration and attention, and the Court is unable to follow her reasoning. Further, the ALJ's determination that Claimant can "sustain attention and/or concentration for at least two-hour periods at a time and for 8 hours in the workday" is not only nonsensical, but is not supported by the record. It is unclear how ALJ Kroenecke reached the two-hour interval figure since none of Claimant's medical records or providers, nor the two State agency psychologists, offered this opinion. *See Goodman v. Saul*, 2020 WL 3619938, at *8 (N.D. In. June 10, 2020) (remanding where the ALJ's determination that the claimant could maintain attention and concentration for two-hour intervals was unsupported by the record); *see also Warren v. Colvin*, 2013 WL 1196603, at *4-5 (N.D. Ill. Mar. 22, 2013) (same; noting that the ALJ "formulated her own independent medical opinion regarding the effects (or lack of effects) of [the claimant's] moderate difficulties of concentration, persistence, or pace").

Moreover, as Claimant highlights, the ALJ's determination that Claimant could "sustain attention and/or concentration for at least two-hour periods at a time and for 8 hours in the workday" essentially amounts to no limitation at all. The Commissioner has previously noted that "normal breaks occur every two hours during a regular 8-hour workday." *Warren*, 2013 WL 1196603, at *5 (citing *Braithwaite v. Commissioner of Social Security*, 2011 WL 1253395, at *5 n.4 (E.D. Cal. Mar. 31, 2011)). It therefore does not make sense that Claimant, who has moderate limitations in her ability to maintain attention and concentration, "would require the same frequency of breaks as a typical worker." *Id.*; *see also Brian P. v. Saul*, 2020 WL 231081, at *4 (N.D. Ill. Jan. 15, 2020) ("The ALJ did not explain how any evidence in the record translates into

6

a finding that [the claimant] can concentrate and persist for any amount of time at a normal pace, let alone for two-hour intervals."); *see also Kelly v. Colvin*, 2015 WL 1930035, at *6 (S.D. Ill. Apr. 28, 2015) ("[T]he RFC assessment is still fatally flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time.").

ALJ Kroenecke has therefore failed to build the requisite logical bridge by supporting her conclusions with evidence and analysis. And because the ALJ's RFC determination is fundamentally flawed, it follows that the hypothetical questions posed to the VE are equally flawed because they did not sufficiently capture Claimant's mental functioning limitations. These errors require remand.

## B. Subjective Symptoms

Claimant next argues that the ALJ erred by rejecting Claimant's subjective symptoms without reason. [Dkt. 14 at 27.] When evaluating a claimant's subjective symptoms, SSR 16-3p requires an ALJ to consider (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) any precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, (6) any measures the claimant uses or has used to relieve pain or other symptoms, and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304, at *3.

Here, the ALJ stated that Claimant's allegations of her physical and mental limitations were not consistent with the medical records. [Dkt. 12-2 at 29, 32.] The ALJ then proceeded to

summarize the medical evidence, but "[a] summary is not analysis, as it does not explain <u>why</u> the evidence summarized undermined Plaintiff's statements about [her] symptoms or limitations, or which statements were inconsistent." *Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)). Moreover, an ALJ is not permitted to reject a claimant's statements about her symptoms "solely because the available objective medical evidence does not substantiate [her] statements," 20 CFR § 404.1529(c)(2), especially without articulating consideration of the SSR 16-3p factors.

      As Claimant correctly argues, the ALJ made no attempt to satisfy the requirements of SSR 16-3p in evaluating her subjective symptoms and thus has failed to provide the requisite logical bridge. This is reversible error.

    C. **Medical Source Opinions**

      Finally, Claimant argues that the ALJ did not support her decision to discredit the medical source opinions. [Dkt. 12-2 at 31.] The ALJ determined that the opinions of State psychological consultants J. Gange, Ph.D., and Joelle Larsen, Ph.D., were partially persuasive; the opinion of Elizabeth Lyon, LCSW, was partially persuasive; the opinion of Kenneth Klotz, Jr., MD, was persuasive; and the opinion of Palmer Mackie, MD, was not persuasive. [Dkt. 12-2 at 34-35.]

      As Claimant points out, the ALJ cited in bulk hundreds of pages of records to support her persuasiveness conclusions of LCSW Lyon, Dr. Klotz, and Dr. Mackie. Doing so does not provide the necessary insight into the ALJ's reasoning, nor does it convince the Court that meaningful consideration of Claimant's disability application has taken place. Most concerning is the fact that, in stating that Dr. Mackie's opinion is not supported by her treatment records, ALJ Kroenecke cites solely to Exhibit B13F/547. [Dkt. 12-2 at 35.] This document, however, is

nothing more than a letter to Claimant requesting payment. [Dkt. 12-19 at 83.] The ALJ's decision to find Dr. Mackie's opinion unpersuasive is therefore not based on substantial evidence. This error also requires remand. On remand, the ALJ shall take care to properly explain the basis for the weight assigned to each medical opinion of record.

### V.  Conclusion

For the reasons set forth above, the Commissioner's decision is **REVERSED and REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated:  15 MAR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.